# EXHIBIT A

Douglas B. Cannon (Bar No. 4287)
FABIANVANCOTT
215 S. State Street, Suite 1200
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
Facsimile: (801) 596-2814
Email: dcannon@fabianvancott.com

Elizabeth A. Bowman (Bar No. 4276)
LAW OFFICE OF ELIZABETH BOWMAN, PLLC
8 East Broadway, Suite 413
Salt Lake City, Utah 84111
Telephone: (801) 532-4570
Facsimile: (815) 642-0611
Email: eabowman@xmission.com
*Attorneys for Plaintiff*

---

**IN THE FOURTH JUDICIAL DISTRICT COURT**
**PROVO DISTRICT, STATE OF UTAH**

---

| | |
|---|---|
| JON PAUL FRANCK, | **COMPLAINT AND JURY DEMAND** |
|     Plaintiff, | **(Tier 3)** |
| vs. | Civil Case No. _____ |
| WRIGHT MEDICAL TECHNOLOGY, INC., |     Judge _____ |
| a Delaware corporation; and DOES 1-50, | |
|     Defendants. | |

Plaintiff Jon Paul Franck by and through his attorneys of record, alleges and complains of defendants as follows:

## PARTIES

1.    Plaintiff Jon Paul Franck is a resident of Utah County, Utah.

2.      Defendant Wright Medical Technology, Inc. is a corporation organized under the laws of the State of Delaware, with its headquarters and principle place of business located in the state of Tennessee. Wright Medical Technology, Inc. designed, tested, manufactured, marketed, and sold Pro-Dense® Bone Graft Substitute that is the subject of this lawsuit.

3.      Defendants Does 1-50 are parties not yet known to Plaintiff and who may have caused or contributed to Plaintiff's injuries and damages.   Plaintiff reserves the right to add all such defendants as they are discovered and/or disclosed.

4.      At all times mentioned herein, each of Defendants and Does 1-50 was a representative, agent, employee, joint venture, or alter ego of each of the other entities, and in doing the things alleged herein was acting within the scope of its authority as such.   Specifically, each of the Defendants were but an instrumentality or conduit of the other in the prosecution of a single venture, namely the design, manufacture, promotion, and sale of Wright Pro-Dense® Bone Graft Substitute.   Therefore, it would be inequitable for any of the Defendants to escape liability for an obligation incurred as much for that Defendant's benefit as for the other.

## JURISDICTION AND VENUE

5.      This court has subject matter jurisdiction over this case.

6.      This court has personal jurisdiction over Defendants in that Defendants' product injured Plaintiff in Utah County, Utah.

7.      Venue is proper in this court pursuant to Utah Code Ann § 78B-3-307.

8.      This case has a value of more than $300,000 and is a Tier 3 case.

2

## FACTUAL BACKGROUND

9.    Wright Medical Technology, Inc. (**"Wright"**) designed, tested, manufactured, marketed and sold the PRO-DENSE® Bone Graft Substitute which is a bone graft product used to replace missing bone ("PRO-DENSE").

10.   PRO-DENSE is a bone graft substitute paste which consists of pre-measured surgical grade calcium sulfate and calcium phosphate, pre-measured neutralized glycolic acid mixing solution, and the tools necessary to mix the components into a paste and inject the material into the defect site.

11.   When the PRO-DENSE is mixed and injected according to directions, the PRO-DENSE bone graft substitute paste will harden in situ and provide temporary intra-operative support.

12.   The PRO-DENSE paste is intended for use as a bone graft substitute to be injected or digitally packed into open bone voids/gaps that are not intrinsic to the stability of bony structure of the skeletal system to cure in situ.   These open bone voids may be surgically created osseous defects or osseous defects created from traumatic injury to the bone.   The paste provides a bone graft substitute that resorbs and is replaced with bone during the healing process.

13.   Wright began marketing and selling PRO-DENSE before 2017.

14.   On or about January 5, 2017, Scott F. Rogers, DPM (**"Dr. Rogers"**) of Rogers Foot & Ankle Institute, American Fork, Utah, saw Mr. Franck and noted likely subchondral talar

cyst of the right ankle and recommended ankle arthroscopy and surgical repair of the subchondral talar cyst.

15.     Dr. Rogers had previously used the PRO-DENSE injectable bone graft paste.   He had read the insert or Instructions for Use which came with the PRO-DENSE.   Dr. Rogers relied upon these Instructions for Use in his use of the PRO-DENSE and in advising his patients about the PRO-DENSE.

16.     Dr. Rogers documents in his January 5, 2017 note that he discussed the risks, benefits and complications of surgical intervention.

17.     Mr. Franck recalls Dr. Rogers informed him he would fill the cyst with surgical cement which hardens up and turns into bone.

18.     Mr. Franck's wife recalls Dr. Rogers stating that Dr. Rogers would remove the cyst and inject a substance which would harden and that bone would grow into the space.

19.     On or about January 6, 2017, Dr. Rogers performed surgery on Mr. Franck at Central Utah Surgical Center to repair Mr. Franck's condition.   Dr. Rogers used Wright's PRO-DENSE® Injectable Bone Graft Filler 4 cc Implant Kit, Instrument Kit, Calcium Sulfate, Calcium Phosphate, 4cc (Model Number 87SR0404 Lot No. 1589527).   The operative report and product label are attached as Exhibit A.

20.     Dr. Rogers determined Mr. Franck's condition permitted use of the PRO-DENSE bone graft paste.

21.     Dr. Rogers determined that the PRO-DENSE paste was not contraindicated for use in Mr. Franck.

22.     A January 3, 2017 MRI of Mr. Franck's right ankle demonstrated no foreign bodies in the

right ankle.

23.     Dr. Rogers did not notice any damage to the PRO-DENSE packaging or materials before

using it on Mr. Franck.

24.     The PRO-DENSE bone graft paste comes in a kit which consists of pre-measured surgical

grade calcium sulfate and calcium phosphate, pre-measured neutralized glycolic acid

mixing solution, and the tools necessary to mix the components into a paste and inject the

material into the defect site.   Dr. Rogers followed all kit instructions provided by Wright

and properly oversaw the preparation of the PRO-DENSE bone graft paste.

25.     Wright's representative made sure the PRO-DENSE bone graft paste was properly

prepared.

26.     Dr. Rogers, using proper surgical procedures and technique, placed the PRO-DENSE bone

graft paste into Mr. Franck's evacuated cyst.

27.     On January 10, 2017, Mr. Franck returned to Dr. Rogers for a post-op visit.   Dr. Rogers

noted he was concerned with the level of Mr. Franck's pain, and advised Mr. Franck to

return on Thursday if the pain did not resolve.

28.     On January 10, 2017, X-ray showed some "cloudy radiodense material to the [right]

ankle."

29.     Mr. Franck returned to Dr. Rogers on January 12, 2017.   Mr. Franck had a lot of pain.

There were no signs of infection.   X Rays (3 views) of the ankle appeared to show "fluffy

radiodense areas to the ankle joint are worse, and more apparent." Dr. Rogers was also

concerned the PRO-DENSE was "leaking" out of the original position.   Dr. Rogers and

Mr. Frank discussed Mr. Frank's condition and they agreed Dr. Rogers would reopen and

scope the ankle.

30.   On January 13, 2017, Dr. Rogers performed surgery on Mr. Franck's right ankle.   Dr.

Rogers found the PRO-DENSE placed in the area of the talar cyst had not "set up",

hardened, or solidified, and "it did not have any significant density to it."   Dr. Rogers

identified "significant" PRO-DENSE throughout the ankle joint.   Dr. Rogers commented

in his surgical report that the PRO-DENSE has formed into several small calcific bodies

which "when you touch them they would turn into further powdery portions."

31.   On January 17, 2017, Dr. Rogers examined Mr. Franck.   Dr. Rogers recommended that he

"wash out the ankle one more time."   Dr. Rogers also told Mr. Franck that he had

contacted "Wright medical and informed them of [his] findings and the lack of the

PRO-DENSE to set up properly."   Dr. Rogers explained to Mr. Frank there was likely

more PRO-DENSE that needed to be removed.

32.   On January 20, 2017, Dr. Rogers performed surgery on Mr. Franck's right ankle.   Dr.

Rogers "removed a significant amount of PRO-DENSE once again."   Dr. Rogers stated in

his operative report that he felt like he was able to remove 90% to 95% of the

PRO-DENSE, but it was still very irritating to the joint.   Dr. Rogers injected Arthrex

calcium phosphate into the cyst area.

33.   On January 24, 2017, Dr. Rogers met with Mr. Franck.   Dr. Rogers told Mr. Franck that he

had not yet heard back from Wright medical with his concerns about PRO-DENSE but had

been in contact with the local Wright representatives.   Dr. Rogers examined Mr. Franck

for any signs of infection and found none.

34.   On January 31, 2017, Dr. Rogers examined Mr. Franck.   Mr. Franck had no signs of

infection.   Dr. Rogers reported he had contacted Wright with his concerns with the

PRO-DENSE but had not heard back from Wright's corporate headquarters, but had been

in contact with local representatives.

35.   On February 14, 2017, Dr. Rogers examined Mr. Franck. Mr. Franck had no signs of

infection.   Dr. Rogers again reported he had contacted Wright about his concerns with

PRO-DENSE but had not heard back from Wright's corporate headquarters, but had been

in contact with local representatives.

36.   Prior to Mr. Frank's January 6, 2017 surgery, Wright had failed to inform physicians or

patients of complication that the PRO-DENSE would not set up and harden.

37.   Prior to the January 6, 2017 surgery, Wright failed to inform Dr. Rogers of the

complication that the PRO-DENSE might not set up and harden.

38.   Prior to his January 6, 2017 surgery, Mr. Franck was not informed of the specific

complications that the PRO-DENSE might not set up and harden.

39.   Mr. Franck continues to have pain in his right ankle, and he has limited mobility and

strength of the joint.

**FIRST CAUSE OF ACTION**
**Strict Liability: Design Defect – All Defendants**

40.   Plaintiff incorporates paragraphs 1-39 as though fully set forth herein.

7

41.   Defendants are in the business of designing, testing, manufacturing, marketing, distributing, and selling the PRO-DENSE at issue in this case.

42.   A product designer, manufacturer, distributor, and seller is liable for injuries caused by its product if: (a) the product was unreasonable dangerous due to a defect; (b) the defect existed at the time the product was sold; and (c) the defect was a cause of the plaintiff's injuries.

43.   A product contains a design defect and is unreasonably dangerous when that product is more dangerous than an ordinary consumer would expect.

44.   The PRO-DENSE in this case contained a design defect in that it was more dangerous than on ordinary consumer would expect.   A patient receiving PRO-DENSE would not expect it to cause the serious complications discussed above, including failure to set up and harden.

45.   The PRO-DENSE failed when implanted into Mr. Franck's ankle.   The design defect included the following:

a.      The PRO-DENSE bone paste failed to set up;

b.      The PRO-DENSE particles migrated throughout the ankle joint; and

c.      The particles of bone paste in the joint caused damage to the joint, and severe pain; negatively affecting Mr. Franck's quality of life.

46.   The design defects made the PRO-DENSE unreasonably dangerous in that a patient receiving the product would not expect it to cause the serious complications discussed above, including pain and damage to the ankle joint.

47.     Mr. Franck did not expect the PRO-DENSE to perform as it did and was completely surprised to learn the PRO-DENSE had failed to solidify and had caused damage to his ankle.

48.     Dr. Rogers did not expect the PRO-DENSE to perform as it did and was completely surprised to learn the PRO-DENSE had failed to solidify and had caused damage to Mr. Franck's ankle.

49.     The design defects of PRO-DENSE were present at the time Defendants manufactured, distributed, and sold the product, and at the time PRO-DENSE was implanted into Mr. Franck.

50.     At the time Defendants designed, manufactured and sold the PRO-DENSE, Defendants had available to them safer and technically and economically feasible alternative designs which would not have caused Mr. Franck's injury in this case.

51.     The PRO-DENSE failed after implantation into Mr. Franck because of the design defect in the PRO-DENSE bone paste.   The failure cased pain, damage to the joint, and loss of quality of life.

52.     As a direct and proximate result of the foregoing, Mr. Franck suffered injury, and has experienced and will continue to experience economic and noneconomic losses including but not limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disfigurement, disability and loss of enjoyment of life.

///

## SECOND CAUSE OF ACTION
### Strict Liability: Manufacturing Defect – All Defendants

53.   Plaintiff incorporates paragraphs 1-52 as though fully set forth herein.

54.   Defendants are in the business of designing, testing, manufacturing, marketing, distributing, and selling the PRO-DENSE at issue in this case.

55.   A product designer, manufacturer, distributor, and seller is liable for injuries caused by the product if: (a) the product was unreasonably dangerous due to a manufacturing defect; (b) the manufacturing defect existed at the time the product was sold; and (c) the manufacturing defect was a cause of the plaintiff's injuries.

56.   A product contains a manufacturing defect and is unreasonably dangerous when (a) the product differs from the manufacturer's design, specifications and/or intentions and (b) the product is more dangerous than an ordinary consumer would expect.

57.   The Defendants are required to manufacture the PRO-DENSE to certain specifications. These specifications cover the various components of the bone paste and mixing chambers.

58.   Defendants represent that when the PRO-DENSE is mixed according to directions, the PRO-DENSE  bone paste will harden in situ and provide temporary intra-operative support.

59.   Dr. Rogers (a) had the PRO-DENSE mixed according to the directions which included using the kit that contains the components and tools required to mix and inject the PRO-DENSE and (b) properly placed the PRO-DENSE.

60.   PRO-DENSE not manufactured to correct specifications could cause the PRO-DENSE to

fail and cause the product to not set up properly.

61.   The PRO-DENSE implanted in Mr. Franck failed in that it did not set up properly and

caused damage to Mr. Frank's joint.

62.   In this case, it may be inferred that the PRO-DENSE was not manufactured correctly

because (a) the PRO-DENSE if manufactured, mixed and placed correctly will harden in

place, (b) the PRO-DENSE in this case was mixed and placed according to Wright's

instructions and with Wright's kit and (c) the PRO-DENSE did not set up properly.

Hence, the most reasonably plausible explanation for the PRO-DENSE's failure to set up is

that it was not manufactured correctly.

63.   The PRO-DENSE manufacturing defect made the PRO-DENSE unreasonably dangerous

in that the improperly manufactured PRO-DENSE failed to set up and caused the Mr.

Franck to have a damaged ankle joint, and pain.

64.   Mr. Franck and Dr. Rodgers did not expect the PRO-DENSE to perform as it did and they

were completely surprised to learn the PRO-DENSE had failed to solidify and had caused

damage to Mr. Franck's ankle.

65.   The PRO-DENSE manufacturing defect was present at the time Defendants manufactured,

distributed, and sold the products, and at the time the PRO-DENSE was implanted into Mr.

Franck.

66.   As a direct and proximate result of the foregoing, Mr. Franck suffered injury, and has

experienced and will continue to experience economic and noneconomic losses including

but not limited to medical, therapy, and related expenses, loss of income and earning capacity, loss of household services and need for assistance; pain, suffering, and emotional distress, disfigurement, disability, and loss of enjoyment of life.

### THIRD CAUSE OF ACTION
**Strict Liability: Failure to Warn/Instructions – All Defendants**

67.    Plaintiff incorporates paragraphs 1-66 as though fully set forth herein.

68.    Defendants are in the business of designing, testing, manufacturing, marketing, distributing, and selling PRO-DENSE.

69.    A product designer, manufacturer, distributor, and seller is liable for injuries caused by its product if: (a) the product was unreasonably dangerous due to lack of an adequate warning; and (b) the lack of adequate warning was the cause of the plaintiff's injuries.

70.    A product with an inadequate warning is unreasonably dangerous when that product is more dangerous than an ordinary consumer would expect.

71.    A designer, manufacturer, and seller medical devices has a duty to stay current on scientific developments about its product and has a duty to give timely and adequate warnings to healthcare professionals and patients of any dangerous side effects produced by its product of which it knows or has reason to know.   The designer and manufacturer also have a duty to provide proper instructions to healthcare providers concerning implantation of PRO-DENSE.

72.    Prior to Mr. Franck's January 6, 2017 surgery, Defendants knew or should have known the complications associated with the use of PRO-DENSE included the following: (a) there

was a danger the PRO-DENSE would not set-up and would therefore cause damage, (b) that these complications would necessitate additional surgeries and (c) that if the PRO-DENSE did not set up properly that it would be impossible to remove all of the PRO-DENSE.

73. Defendant should have–but did not–inform healthcare professionals, including Dr. Rogers, of these potential serious complications from PRO-DENSE and of the need to inform patients of these complications including:

   a. The PRO-DENSE may not set-up and can therefore cause damage;

   b. That these complications would necessitate additional surgeries; and

   c. That if the PRO-DENSE did not set up properly that it would be impossible to remove all of the PRO-DENSE.

74. Had Defendants adequately warned healthcare professionals, including Dr. Rogers, of the potential serious complications associated with PRO-DENSE, Dr. Rogers would have conveyed this information to Mr. Franck and Mr. Franck would *not* have chosen to undergo surgery to implant the PRO-DENSE.

75. PRO-DENSE was unreasonably dangerous because a patient receiving it would not expect it to cause the serious complications noted above.

76. Mr. Franck and Dr. Rodgers did not expect the PRO-DENSE to perform as it did and they were completely surprised to learn the PRO-DENSE had failed to solidify and had caused damage to Mr. Franck's ankle.

77.   The PRO-DENSE failure to warn defect was present at the time Defendants manufactured, distributed and sold the product, and at the time the PRO-DENSE was implanted into Mr. Franck.

78.   As a direct and proximate result of the foregoing, Mr. Franck suffered injury, and has experienced and will continue to experience economic and noneconomic losses including but not limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disfigurement, disability and loss of enjoyment of life.

## FOURTH CAUSE OF ACTION
### Negligence – All Defendants

79.   Plaintiff incorporates paragraphs 1-78 as though fully set forth herein.

80.   Defendants are in the business of designing testing, manufacturing, marketing, distributing, and selling PRO-DENSE.

81.   Defendants have a duty to exercise reasonable care in designing, testing, manufacturing, marketing, distributing, and selling PRO-DENSE.

82.   Defendants have a duty to stay current on scientific developments about their product and to give timely and adequate warning to healthcare professionals and patients of any dangerous side effects caused by their product of which they know of have reason to know.

83.   Defendants failed to exercise reasonable care in designing, testing, manufacturing, marketing, distributing and selling PRO-DENSE, including failing to exercise reasonable care to prevent its failure as documented above.   More specifically these failures include:

a.  Defendants failure to provide proper warnings as discussed above.

84.  As a direct and proximate result of the foregoing, Mr. Franck suffered injury, and has experienced and will continue to experience economic and noneconomic losses including but not limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disfigurement, disability, and loss of enjoyment of life.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability – All Defendants

85.  Plaintiff incorporates paragraphs 1-84 as though fully set forth herein.

86.  Defendants are in the business of designing testing, manufacturing, marketing, distributing, and selling PRO-DENSE.   Defendants designed, tested, manufactured, marketed, distributed, and sold the PRO-DENSE at issue in this case.

87.  PRO-DENSE breached implied warranty of merchantability.   Utah Code § 70A-2-314.

88.  As a direct and proximate result of the foregoing, Mr. Franck suffered injury, and has experienced and will continue to experience economic and noneconomic losses including but limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disfigurement, disability, and loss of enjoyment of life.

## SIXTH CAUSE OF ACTION
### Breach of Express Warranty – Wright Medical Technology (Wright)

89.  Plaintiff incorporates paragraphs 1-88 as though fully set forth herein.

15

90.   Wright is in the business of designing testing, manufacturing, marketing, distributing, and selling PRO-DENSE.

91.   Wright through written materials has made certain important statements directly to Dr. Rogers before he used the PRO-DENSE on Mr. Franck.   These important statements include but are not limited to the following:

   a.   The PRO-DENSE Bone Graft Substitute paste consists of pre-measured surgical grade calcium sulfate and calcium phosphate, pre-measured neutralized glycolic acid mixing solution and the tools necessary to mix the components into a paste and inject the material into the defect site; and

   b.   When the PRO-DENSE is mixed and injected according to directions, PRO-DENSE  Bone Graft Substitute paste will harden in situ and provide temporary intra-operative support.

92.   Dr. Rogers relied upon these statements in making his recommendations to his patients, including Mr. Franck.

93.   Dr. Rogers and Mr. Franck discussed the PRO-DENSE and Dr. Rogers, consistent with Wright's statements above, told Mr. Franck the PRO-DENSE would harden up.

94.   Mr. Franck relied upon these statements and consented to the use of the PRO-DENSE.

95.   Wright breached this warranty by producing PRO-DENSE which did not harden up in place.

96.   As a direct and proximate result of the foregoing, Mr. Franck suffered injury, and has experienced and will continue to experience economic and noneconomic losses including

but limited to medical, therapy, and related expenses; loss of income and earning capacity; loss of household services and need for assistance; pain, suffering, and emotional distress; and disfigurement, disability, and loss of enjoyment of life.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants for a just amount together with pre- and post-judgment interest and costs as follows:

1.     For general damages in an amount to be proven at trial;

2.     For special damages in an amount to be proven at trial, including interest as provided by Utah Code § 78B-5-824.

3.     For other damages as allowed by law; and

4.     For Plaintiff's attorney fees and costs incurred herein, together with such other and further relief as the Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated this 4th day of January, 2019.

FABIAN VANCOTT

*/s/ Douglas B. Cannon*
Douglas B. Cannon

LAW OFFICE OF ELIZABETH BOWMAN, PLLC

*/s/ Elizabeth Bowman*
Elizabeth A. Bowman
**Attorneys for Plaintiff**

# Exhibit A

# Exhibit A

## OPERATIVE REPORT

| | |
|---|---|
| **CENTRAL UTAH SURGICAL CENTER, L.L.C.** 1067 North 500 West Provo, Utah 84604 | **PATIENT:** FRANCK, JON<br>**MEDICAL RECORD #:** 099253<br>**DATE OF BIRTH:** September 18, 1968<br>**PHYSICIAN:** SCOTT F. ROGERS, D.P.M.<br>**DATE OF SERVICE:** January 6, 2017 |

**PREOPERATIVE DIAGNOSIS:**
1. Synovitis, right ankle.
2. Talar cyst, right ankle.

**POSTOPERATIVE DIAGNOSIS:**
1. Synovitis, right ankle.
2. Talar cyst, right ankle.

**OPERATION PERFORMED:**
1. Right ankle arthroscopy, with synovectomy.
2. Repair of subchondral talar cyst, right ankle.

**SURGEON:**                   SCOTT F. ROGERS, D.P.M.

**ANESTHESIA:**                Local with IV sedation.

**COMPLICATIONS:**             None.

**FINDINGS:**
The patient had a large subchondral cyst.

**DESCRIPTION OF PROCEDURE:**
On the above-mentioned date the patient was brought to the operating table and placed in the supine position.  Following IV sedation approximately 10 mL of 2% lidocaine plain was carried out in a modified ankle block.  A well-padded pneumatic tourniquet was applied and the foot was then prepped and draped in the usual sterile and aseptic technique.  The foot was then exsanguinated and the tourniquet was elevated to 250 mmHg and left there throughout the surgical procedure.  Attention was then directed toward the anterior aspect of the ankle.  The

FRANCK, JON
OPERATIVE REPORT
January 6, 2017
Page Two

medial and lateral portals were identified, after the ankle was
distracted, and the knee was then placed in a well-knee holder.
We were able to identify those portals via nick and spread
technique.  The arthroscope was introduced medially first, and
we were able to identify some significant synovitis and almost a
meniscoid body that had developed from the tibiofibular
syndesmosis, as well as from the posterior aspect of the medial
ankle.  It was removed, and actually the cartilaginous surfaces
were healthier than I would expect.  They sat in very good
alignment.  There was one area to the to the posterolateral
aspect of the ankle on the talar side that did have some
partial-thickness degradation of the cartilage, but overall it
was fairly healthy.  We removed all of the rest of the
synovitis.  The scope was then switched to the lateral position.
We went ahead and removed any of the significant portions of
synovitis.  There was some significant synovitis found to the
posterolateral aspect of it.  It was removed, and then we
directed our attention toward the subchondral cyst.  Using
fluoroscopic guidance we were able to introduce a guidewire into
the area just to the lateral aspect of the joint in the area of
question from the MRI.  We then dissected down through the sinus
tarsi and introduced a 4.4 drill, and then started to curet the
area.  It was a significantly large curet, surprisingly so.  We
used both multiple planes as well as fluoroscopic guidance, and
arthroscopic guidance to identify to make sure that we were in
the appropriate place.  Once all of the curetted area was
removed, we went ahead and packed the area with approximately
6 mL of Pro-Dense.  We were able to identify it as it flowed in,
and did not demonstrate any significant Pro-Dense into the
joint.  The area was irrigated one more time, and then closed in
layers using #3-0 Vicryl and #3-0 Prolene.  A well-padded A
below-the-knee dressing was applied, and a well-padded A
below-the-knee cast was applied.  The patient was transported to
the recovery room with vital signs stable and vascular status
intact.

**"I AUTHORIZE MY NAME TO BE AUTOMATICALLY AFFIXED TO THIS REPORT
AS SIGNIFYING THAT I DICTATED AND REVIEWED THIS REPORT."**

SCOTT F. ROGERS, D.P.M.

SFR/sk7  T:  01-06-2017  664456



# Central Utah Surgical Center
## Implant Record

| Implant Stickers | CATALOG # and/or MODEL # SERIAL # and/or LOT # | SIZE |
|---|---|---|
| RT ☐   LT ☐ | Cat # / Model # | |
| | Serial # / Lot # | |
| | Cat # / Model # | |
| | Serial # / Lot # | |
| | Cat # / Model # | |
| | Serial # / Lot # | |
| | Cat # / Model # | |
| | Serial # / Lot # | |
| | Cat # / Model # | |
| | Serial # / Lot # | |
| | Cat # / Model # | |
| | Serial # / Lot # | |
| | Cat # / Model # | |
| | Serial # / Lot # | |
| | Cat # / Model # | |
| | Serial  **WRIGHT.** Wright Medical Technology, Inc. 1023 Cherry Road Memphis, TN 38117, USA | |
| | Cat # REF 87SR0404      2019-11-10 LOT 1589527      2016-11-12 Serial  PRO-DENSE® Injectable 1 Implant Kit, 1 Instrument Kit Material: Calcium Sulfate, Calcium Phosphate | |
| | Cat # **vol: 4cc** Serial  ATTACH TO PATIENT RECORD | |
| | Cat # / Model # | |
| | Serial # / Lot # | |
| | Cat # / Model # | |
| | Serial # / Lot # | |

Patient's St
6662   -3  FRANCK, JON
MR:  099253          Dos:  01/06/17
Dob:  09/18/68          Age:  48
Dr:    ROGERS, DPM, SCOTT F
Central Utah Surgical Center

Circulator _____

White - Patient Chart          Yellow - Charge Sheet          Pink - Implant Log

## RETURN OF SERVICE

State of Utah                         County of UTAH                         Fourth District Court

Case Number: 190400016

Plaintiff:
**JON PAUL FRANCK**

vs.

Defendant:
**WRIGHT MEDICAL TECHNOLOGY, INC.; DOES 1-50**

For:
Douglas B. Cannon
FABIAN VANCOTT
215 So. State St.
Salt Lake City, UT 84151

Received by ANDERSON INVESTIGATIONS, INC. on the 7th day of January, 2019 at 12:13 pm to be served on **WRIGHT MEDICAL TECHNOLOGY, INC. R/A CSC, 15 WEST SOUTH TEMPLE, SUITE 1701, SALT LAKE CITY, UT 84101.**

I, C. D. ANDERSON, do hereby affirm that on the **8th day of January, 2019** at **1:45 pm, I:**

Served the within named **CORPORATION** by delivering a true copy of the **SUMMONS & COMPLAINT AND JURY DEMAND (TIER 3); EXHIBITS** with the date and hour of service endorsed thereon by me to CSC/SUZANNE PETERSON as **Registered Agent** of the within named corporation, in compliance with state statutes.

I am over the age of 21 and have no interest in the above action.  I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was executed.  Pursuant to Utah Code Annotated 78-B-5-705, I declare under criminal penalty that the foregoing is true and correct.

**C. D. ANDERSON**
Process Server

**ANDERSON INVESTIGATIONS, INC.**
**P.O. BOX 535**
**Salt Lake City, UT 84110**
**(801) 619-1110**

Our Job Serial Number: AND-2019000057

Copyright © 1992-2019 Database Services, Inc. - Process Server's Toolbox V8.0i

Server  C Cul
Date 1-8-19   Time  1:45PM
P/S CSC/ SUZANAL  PETORSON
~~illegible~~
~~illegible~~

Douglas B. Cannon (Bar No. 4287)
FABIANVANCOTT
215 S. State Street, Suite 1200
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
Facsimile: (801) 596-2814
Email: dcannon@fabianvancott.com

Elizabeth A. Bowman (Bar No. 4276)
LAW OFFICE OF ELIZABETH BOWMAN, PLLC
8 East Broadway, Suite 413
Salt Lake City, Utah 84111
Telephone: (801) 532-4570
Facsimile: (815) 642-0611
Email: eabowman@xmission.com
*Attorneys for Plaintiff*

## IN THE FOURTH JUDICIAL DISTRICT COURT
## IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| JON PAUL FRANCK,<br><br>        Plaintiff,<br><br>vs.<br><br>WRIGHT MEDICAL TECHNOLOGY,<br>INC., a Delaware corporation; and DOES 1-<br>50,<br><br>        Defendants. | **SUMMONS**<br>**(Tier 3)**<br><br>Case No. 190400016<br>Hon. Thomas Low |

**TO:**    WRIGHT MEDICAL TECHNOLOGY, INC.
             c/o Corporation Service Company, as Registered Agent
             15 West South Temple, Ste. 1701
             Salt Lake City, UT 84101

You are hereby summoned and required to answer the attached Complaint.  Within twenty-

one (21) days after service of this summons, you must file your written answer with the clerk of

the above-captioned court at Fourth District, Utah County - Provo District Court, 125 North 100 West, Provo, UT 84601.  Within that same time, you must mail or deliver a copy of your answer to Plaintiff's attorneys, Douglas B. Cannon of Fabian VanCott, 215 S. State Street, Ste. 1200, Salt Lake City, UT 84111 and Elizabeth A. Bowman of the Law Offices of Elizabeth Bowman, PLLC, 8 East Broadway, Suite 413, Salt Lake City, UT 84111.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

DATED this 7th day of January, 2019.

FABIAN VANCOTT

/s/ Douglas B. Cannon
Douglas B. Cannon

LAW OFFICE OF ELIZABETH BOWMAN, PLLC

/s/ Elizabeth Bowman
Elizabeth A. Bowman
**Attorneys for Plaintiff**